JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-00765 JGB (SHKx)** | Date | June 30, 2022 |
|---|---|---|---|
| Title | *Thomas Foster Byler III v. Crown Castle USA, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| TANISHA CARRILLO | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand to San Bernardino Superior Court (Dkt. No. 11); (2) DENYING AS MOOT Defendant's Motion to Dismiss (Dkt. No. 14); and (3) VACATING the July 11, 2022 Hearing (IN CHAMBERS)

    Before the Court are a motion to remand filed by Plaintiff Thomas Byler III ("Motion," Dkt. No. 11) and a motion to dismiss filed by Defendant Crown Castle USA, Inc. (Dkt. No. 14). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion, DENIES AS MOOT the motion to dismiss, and VACATES the July 11, 2022 hearing.

## I.  BACKGROUND

    On March 17, 2022, Plaintiff Thomas Byler III ("Plaintiff" or "Mr. Byler") filed a putative class action in the Superior Court of the State of California for the County of San Bernardino against Defendant Crown Castle USA, Inc. ("Defendant" or "Crown Castle"). ("Complaint," Dkt. No. 1-1, Ex. A.)  The Complaint asserts eight causes of action: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to reimburse business expenses; (6) failure to provide accurate itemized wage statements; (7) failure to pay all wages due upon separation of employment; and (8) violation of Cal. Bus. & Prof. Code § et seq.  (See Complaint.)

On May 4, 2022, Crown Castle removed to this Court alleging Class Action Fairness Act ("CAFA") jurisdiction. ("Notice of Removal," Dkt. No. 1.) Mr. Byler moved for remand on May 20, 2022. (Motion.) Crown Castle opposed on June 6, 2022. ("Opp.," Dkt. No. 13.) Mr. Byler replied on June 13, 2022. ("Reply," Dkt. No. 15.)

## II.   FACTS

Mr. Byler is a former non-exempt, hourly employee of Crown Castle. He brought his action on behalf of a putative class of California citizens who are and were employed by Crown Castle as non-exempt employees in California. (Complaint ¶ 1.) The proposed classes are defined as follows:

> Class: All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 29, 2017 and the date of class certification ("Class").

Id. ¶ 20.

> Waiting Time Subclass: All members of the Class who separated their employment with Defendant at any time between August 29, 2018 and the date of class certification ("Waiting Time Subclass").

Id. ¶ 21.

The Complaint alleges that the Class did not receive all wages earned for work that was required to be performed in that they were not paid all wages (including minimum wages and overtime wages) for all hours worked at the correct rate of pay. (Id. ¶ 29.) Class members did not receive all meal periods or payment of one additional hour of pay at their hourly rate of pay. (Id. ¶ 30.) They also did not receive all rest breaks or payment of one additional hour of pay at their regular rate of pay when a rest break was missed, late, or interrupted. (Id. ¶ 31.) Class members also were not reimbursed for all business expenses. (Id. ¶ 31.)

## III.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a

preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

A defendant is only required to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).  However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id.  The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).  The parties may submit evidence, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.  "As with other important areas of our law, evidence may be direct or circumstantial.  In either event, a damages assessment may require a chain of reasoning that includes assumptions.  When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199.  "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorney's fees may also be included in the amount in controversy.  "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted).  However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

## IV.  DISCUSSION

Mr. Byler moves for remand on the ground that Crown Castle failed to prove by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA.  In the Notice of Removal, Crown Castle asserts that the amount in controversy requirement under CAFA is satisfied because the maximum potential value of Mr. Byler's claims places at least $6,228,058.32 in controversy, excluding attorneys' fees and interest. (Notice of Removal at 7.)  Crown Castle does not provide amounts in controversy for attorneys' fees, unpaid wages, overtime, or business expenses.  (See id.)

## A. Diversity

The existence of minimal diversity is undisputed. Mr. Byler is a citizen of California. (Comp. ¶ 10.) Crown Castle is a corporation formed under the laws of the Commonwealth of Pennsylvania, and its principal place of business is in Pennsylvania. (Notice of Removal at 2; Dkt. No. 1-2, Declaration of Donald Reid, "Reid Decl.," ¶¶ 3-5.) CAFA's minimal diversity requirement is satisfied.

The Class includes at least 299 people. (Dkt. No. 1-3, Declaration of Jerry Gray, "Gray Decl.," ¶ 3.) CAFA's numerosity requirement is also satisfied.

## B. Amount in Controversy

While "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," Dart, 135 S. Ct. at 554, "[e]vidence establishing the amount is required where…defendant's assertion of the amount in controversy is contested by plaintiffs." Ibarra, 775 F.3d at 1197 (citing Dart, at 554) (internal quotations omitted). Then the court determines whether defendant has established by a preponderance of the evidence that the amount in controversy exceeds the $5 million jurisdictional threshold. Id.

Crown Castle submitted the Declaration of Jerry Gray in support of the Notice of Removal. (See Gray Decl.) Mr. Gray declares, in relevant part:

1. I currently am employed by [Crown Castle]…as its Manager, Payroll. Except where otherwise noted, I have personal knowledge of all of the facts set forth below…
2. In my position as Manager, Payroll, I am familiar with the databases and software and computer systems that Crown Castle uses to maintain its human resources, timekeeping, and payroll records as well as the data itself, including employee records, payroll, time punch data, time off, and more. I have access to such information pertaining to current and former Crown Castle employees who are or were employed in California. This information is stored electronically in Crown Castle's human resources management, timekeeping, and payroll systems in the ordinary course of business…
3. Based on the Records, Defendant employed at least 299 non-exempt employees in California from August 29, 2017 to April 13, 2022.
4. Based on the Records, these 299 putative class members worked approximately 130,030 workdays over 3.5 hours during the four-year period, and approximately 126,748 workdays over 5 hours from August 29, 2017 to the present, and received an average base hourly rate of $38.08.
5. Based on the Records, the employment of 93 putative class members was terminated during the three-year period from August 29, 2018 to April 13, 2022, and worked an average of 8.29 hours per day during their employment, and earned an average hourly wage of $38.39.

> 6. Based on the Records, Defendant employed 2015 putative class members who were issued a total of 4,927 wage statements for the applicable pay periods during the one year limitations period from March 17, 2021 through April 13, 2022. Each of these 215 putative class members was issued fewer than 41 wage statements for the applicable pay periods during the one year limitations period from March 17, 2021 through April 13, 2022.

Id.

Defendants present no new evidence in support of their Opposition to the Motion. Accordingly, Defendants have provided some evidentiary support for three factual matters: (i) the Class consists of 299 putative class members; (ii) 93 of those class members are former employees; and the average base hourly rate was $38.08. Crown Castle represents that from the 299 putative class members worked approximately 130,040 workdays over 3.5 hours and approximately 126,748 workdays over 5 hours during the applicable time period. (Id. ¶ 4.) However, Crown Castle does not explain how these figures were calculated, or why Crown Castle elected to use workdays rather than workweeks, which appears to be the more common metric used to determine violation rates. The workdays figure does not offer a way to determine whether the Class members worked five days per week. Further, there is no indication whether Crown Castle's calculation includes vacation periods or other paid time off in which they would not have been subject to meal and rest period violations.

Lastly, and most crucially, is the violation rate at dispute in this matter. Crown Castle uses a 50% violation rate for both the unpaid meal and unpaid rest calculations and provides the following calculations to support the amount in controversy:

> Unpaid Meal Period Premium Pay: $38.08 (average hourly base rate) x 126,748 (workdays over 5 hours) x 50% = $2,413,281.92.
>
> Unpaid Rest Period: $38.08 (average hourly base rate) x 130,040 (workdays over 3.5 hours) x 50% = $2,475,281.60.
>
> Wage Statement Penalties: [215 (number of putative class members) x $50] + [4,927 (wage statements issued during the one-year limitations period) – 215 (number of 1-year putative class members) x $100] = $481,950.00.
>
> Waiting Time Penalties: $38.39 (average base hourly rate of the 93 terminated employees) x 8.0 (average 8.29) x 30 (maximum days of penalty pay) x 93 (number of putative class members terminated) = $856,864.80.

(Notice of Removal at 4-5.) Crown Castle argues that the 50% violation rate is appropriate because Mr. Byler alleges a "systematic pattern of wage and hour violations" and references the company's "policies and practices." (Opp. at 3-4.) In Ibarra, the defendant argued that a 100% violation rate was applicable the complaint alleged a "pattern and practice of failing to pay"

overtime wages, in addition to policies and practices that institutionalized unlawful conduct. 775 F.3d at 1198. The Ninth Circuit held that the 100% violation rate was unreasonable because a "'pattern and practice' of doing something does not necessarily mean **always** doing something." (Id. at 1198-99) (emphasis in original). The rate was "pulled from this air" and "not grounded in real evidence" because the complaint did not allege that the defendant "universally, on each and every shift, violate[d] labor laws" or allegations that indicate violations occurred each shift. Id.

Crown Castle's argument would be persuasive if the allegations, read together, did not suggest a violation rate less than 50%. For example, Mr. Byler alleges that Crown Castle's policies and practices violated state law in… "failing to pay all wages earned…failing to provide compliant meal periods without paying…premium wages…" Complaint ¶ 95; see also id. ¶¶ 29-33 (Class members did not receive "**all** meal periods or payment" of one hour of pay at the Class member's rate and did not receive "**all** rest breaks.") (emphasis added). District courts have held that the "difference between 'any' and 'all' is material." Koreisz v. On Q Financial, Inc., 2018 WL 6567694, *4 (C.D. Cal. Dec. 12, 2018) (citing Viilitchai v. Ametek Programmable Power, Inc., 2017 WL 875595, *3 (S.D. Cal. Mar. 6, 2017). "Whereas the allegation that [d]efendants did not pay for **any** overtime would support a 100% violation rate, the allegation that they did not pay for **all** of it allows for the conclusion that Defendants paid for some of the overtime worked." (Id.) (emphasis in original).

The allegations do not support a 50% violation rate and Crown Castle offers no other justification to assume so. See Sanderes v. Old Dominion Freight Line, Inc., 2017 WL 5973566, *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support [a specific] violation rate, the use of a 50% violation rate (or virtually any other violation rate for that matter) is completely arbitrary and little more than speculation and conjecture.")). There is nothing in the Complaint from which this Court can reasonably infer that both Class members' meals and break times were violated five times, each, per pay period. See Francisco v. Emeritus Corp., 2017 WL 2541401, *4 (C.D. Cal. June 12, 2017) (finding "a reasonable assumption of a weekly violation rate" where plaintiff alleged a "pattern and practice" of labor law violations); see also Toribio v. ITT Aerospace Controls LLC, 2019 WL 4254935 (C.D. Cal. Sept. 5, 2019) (listing cases). A weekly violation rate is equal to two violations per pay period or a 20% violation rate—less than half of the unpaid meal and rest premiums. If the Court were to assume a 25% violation rate—slightly higher than the 20% rate in Francisco, 2017 WL 4254935, *4—then the total amount in controversy is $3,783,096.56, well below CAFA's jurisdictional requirement.

Crown Castle appears to entertain the notion that it has fulfilled its burden where Plaintiff has not offered alternative figures. As other courts in this district have held:

> [Defendants] offer no support for the assumptions they make regarding [the violation rate(s) aspect of] their respective amount in controversy calculations. Given that Defendants have not met their burden, it is not necessary for Plaintiff to come forward with evidence in support of his estimate of the amount in controversy.

> Where, as here, the evidence is in equipoise, i.e., no evidence on either side, "the scales tip against federal-court jurisdiction.

Toribio, 2019 WL 4254935, *4 (citing Villitchai, 2017 WL 875595, *4). It is Crown Castle's burden to show, by a preponderance of the evidence, that the amount in controversy requirement is met. It has failed to meet that burden.

## V.  CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's Motion to Remand. Defendant's motion to strike or dismiss is DENIED AS MOOT. The July 11, 2022 hearing is VACATED. The case is REMANDED to the Superior Court of California for the County of San Bernardino.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**